# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | | |
|---|---|---|
| TRILLER, INC., § | | |
| *Plaintiff,* § | | |
| § | | |
| v. § | | 6-20-CV-00693-ADA |
| § | | |
| BYTEDANCE, LTD., BYTEDANCE, § | | |
| INC., TIKTOK, INC., TIKTOK PTE. § | | |
| LTD., § | | |
| *Defendants.* § | | |

## ORDER GRANTING MOTION TO TRANSFER

Came on for consideration this date is Defendants' Motion to Transfer to the Northern District of California ("NDCA") pursuant to 28 U.S.C. § 1404(a). After careful consideration of the Motion, the Parties' briefs, and the applicable law, the Court is of the opinion that the Motion should be **GRANTED**.

## I. INTRODUCTION

A party seeking a transfer to an allegedly more convenient forum carries a significant burden. *Babbage Holdings, LLC v. 505 Games (U.S.), Inc.,* No. 2:13-CV-749, 2014 U.S. Dist. LEXIS 139195, at *12–14 (E.D. Tex. Oct. 1, 2014) (stating the movant has the "evidentiary burden" to establish "that the desired forum is clearly more convenient than the forum where the case was filed"). The burden that a movant must carry for a Section 1404(a) transfer is not that the alternative forum is more convenient, but that it is clearly more convenient. *In re Volkswagen, Inc.*, 545 F.3d 304, 314 n.10 (5th Cir. 2008) (hereinafter "*Volkswagen II*"). Defendants agreed to jurisdiction and venue in the Western District of Texas ("WDTX") "for the purposes of this case only," or "[t]o streamline proceedings." Defs.' Joinder, ECF No. 45-1 at ¶ 1

n.1. Defendants subsequently moved to have this case transferred to NDCA, and the Court finds that transfer to NDCA is warranted.

## II. LEGAL STANDARD

Section 1404(a) provides that, for the convenience of parties and witnesses, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented. "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The party seeking a transfer under Section 1404(a) must show good cause. *Volkswagen*, 545 F.3d at 315 (quoting *Humble Oil & Refin. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963)). In this context, showing good cause requires the moving party to "clearly demonstrate that a transfer is for the convenience of parties and witnesses [and] in the interest of justice." *Id.* (cleaned up) (quoting 28 U.S.C. § 1404(a)). When the movant fails to demonstrate that the proposed transferee venue is "clearly more convenient" than the plaintiff's chosen venue, "the plaintiff's choice should be respected." *Id.* Conversely, when the movant demonstrates that the proposed transferee venue is clearly more convenient, the movant has shown good cause and the court should transfer the case. *Id.* The "clearly more convenient" standard is not equal to a clear-and-convincing-evidence standard, but it is nevertheless "materially more than a mere preponderance of convenience." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-CV-00118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019).

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue." *Volkswagen II*, 545 F.3d at 312. If so, in the Fifth Circuit, the

"[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (*Volkswagen I*) (citing to *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on "the situation which existed when suit was instituted." *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

Although these factors "are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *Volkswagen II,* 545 F.3d at 315. Moreover, courts are not to merely tally the factors on each side. *In re Radmax, Ltd.*, 720 F.3d 285, 290 n.8 (5th Cir. 2013). Instead, courts "must make factual determinations to ascertain the degree of actual convenience, if any, and whether such rises to the level of 'clearly more convenient.'" *Quest NetTech*, 2019 WL 6344267, at *7 (citing *In re Radmax*, 720 F.3d at 290 (holding that, where five factors were neutral, two weighed in favor of transfer, and one weighed "solidly" in favor of transfer, the movant had met its burden)); *see also In re Radmax*, 720 F.3d at 290 (holding that courts abuse their discretion when they deny transfer solely because the plaintiff's choice of forum weighs in favor of denying transfer). A plaintiff's choice of venue is

not an independent factor in the venue transfer analysis, and courts must not give inordinate weight to a plaintiff's choice of venue. *Volkswagen II*, 545 F.3d at 313 ("[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege."). However, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.* at 315; *see also QR Spex, Inc. v. Motorola, Inc.*, 507 F.Supp.2d 650, 664 (E.D. Tex. 2007) (characterizing movant's burden under Section 1404(a) as "heavy").

### III. BACKGROUND

Plaintiff Triller, Inc. filed this patent infringement suit against Original Defendants ByteDance, Ltd. ("BDL") and TikTok, Inc. ("TTI") on July 29, 2020. Pl.'s Compl., ECF No. 1. Triller is incorporated in Delaware with its principal place of business located in Los Angeles, California. *Id*. at ¶ 3. BDL is a Cayman Islands corporation, and TTI is incorporated in California with its principal place of business located in Culver City, California. Defs.' Mot., ECF No. 30 at ¶¶ 1, 7.

Defendant BDL filed a Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction contemporaneously with Defendants' Rule 12(b)(3) Motion to Dismiss or Transfer pursuant to 1404(a) on November 19, 2020. Def. BDL's Mot. to Dismiss, ECF No. 29; Defs.' Mot. On November 24, 2020, Triller amended its Complaint to include additional Defendants ByteDance, Inc. ("BDI") and TikTok, Pte. Ltd. ("TTPL"). Pl.'s Amend. Compl., ECF No. 32 at ¶ 1. BDI is incorporated in Delaware with its principal place of business in Mountain View, California, and TTPL is a Singapore corporation. Defs.' Reply, ECF No. 68 at ¶ 2; Pl.'s Amend. Compl. at ¶ 3.

Triller claims that BDL "controls the majority of the shares or other ownership units of TTI, BDI, and TTPL and controls or attempts to control the activities of each of them," and that BDI is the *alter ego* of TTI. Pl.'s Amend. Compl. at ¶¶ 3, 13. Furthermore, BDI's Global Business Solutions unit is based in Austin, Texas, and the "TikTok app has been widely distributed in [WDTX.]" Pl.'s Resp., ECF No. 63 at ¶ 14; Pl.'s Amend. Compl. at ¶ 5.

On February 1, 2021, BDI and TTPL joined the Original Defendants' Section 1404(a) Motion to Transfer. Defs.' Joinder, ECF No. 51. The Original Defendants then withdrew their Motions to Dismiss consenting to this Court's jurisdiction "for purposes of this case only." Defs.' Joinder at ¶ 1 n.1. Triller filed its Response on May 12, 2021, and Defendants filed their Reply on June 1, 2021. Pl.'s Resp.; Defs.' Reply. On June 25, 2021, the Court held a hearing on Triller's Motion to Strike information presented in Defendants' Reply, and the Motion to Strike was denied. Text Order denying Plaintiff's Motion to Strike (July 6, 2021).

Triller's Complaint alleges infringement of U.S. Patent No. 9,691,429 titled "Systems and methods for creating music videos synchronized with an audio track" (the "Asserted Patent"). Pl.'s Amend. Compl. at ¶ 1. Triller is the developer and distributor of a social video platform application for iOS and Android devices. *Id*. Triller claims that Defendants "directly and indirectly infringe the Asserted Patent by making, using, offering for sale, selling, importing, and/or inducing others to use the popular iOS and Android software application known as 'TikTok.'" *Id*. at ¶ 2. The TikTok application is also a social video platform application for iOS and Android devices. *Id*. at ¶ 5. Triller claims the TikTok application infringes the Asserted Patent through the Green Screen Video ("GSV") effect, which allows TikTok application users to "shoot over" synchronized video and audio tracks. *Id*. at ¶ 23.

### IV. ANALYSIS

The threshold determination in the Section 1404(a) analysis is whether this suit "might have been brought" in NDCA or if all parties "consent[]" to NDCA. 28 U.S.C. § 1404(a). Defendants consent to NDCA jurisdiction, but Triller does not. Pl.'s Resp. at ¶¶ 2–3. Thus, the Court turns its attention to whether this suit might have been brought in NDCA against all Defendants.

"Any civil action for patent infringement may be brought in any judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). A defendant has a "regular and established place of business" in any district where (1) a defendant has a physical place, (2) the physical place is a regular and established place of business, and (3) the physical place is the place of the defendant. *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). When a foreign corporation is sued for patent infringement, 28 U.S.C. § 1391 applies and not 28 U.S.C. § 1400. *In re HTC*, 889 F.3d 1349, 1357 (Fed. Cir. 2018). "A civil action may be brought in—(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b)(1–3).

The Court finds that this suit might have been brought in NDCA against domestic Defendants BDI and TTI. Venue is proper as to BDI under Section 1400(b) because it has a regular and established place of business in NDCA (Mountain View, California), and alleged acts of infringement (e.g., distribution of the TikTok application) have occurred in NDCA. Pl.'s

Compl. at ¶¶ 15–16. Likewise, venue is proper as to TTI under Section 1400(b); although TTI is headquartered in the Central District of California ("CDCA"), TTI has "over ▇ employees located in a regular and established place of business in Mountain View, California." Defs.' Mot. at ¶ 7. Therefore, venue is proper as to both BDI and TTI under Section 1400(b) and this suit might have been brought against them in NDCA.

Jurisdiction and venue are also appropriate in NDCA with regards to foreign Defendants BDL and TTPL. "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇" Defs.' Reply at ¶ 2; *see also* Fed. R. Civ. P. 4(k)(2) (jurisdiction over foreign defendants might have been established by Triller merely filing a summons in NDCA). The Court is also of the opinion that the venue requirement is met through either 28 U.S.C. § 1391(b)(2) or (3) via BDI and TTI's presence in NDCA as developers of the allegedly infringing TikTok application. Defs.' Joinder at ¶ 2. Furthermore, BDL and TTPL have affirmatively stated that they will consent to jurisdiction in NDCA. Defs.' Reply at ¶ 2. Therefore, the Court finds that this suit "might have been brought" in NDCA against all Defendants.

### A. The Private Interest Factors Favor Transfer

#### i. The Relative Ease of Access to Sources of Proof

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv, Inc. v. Apple, Inc.*, 2019 WL 4743678, at *2. "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d at 288 (emphases in original). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the

defendant's documents are kept weighs in favor of transfer to that location." *In re Apple, Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)). Here, the Court finds that the location of physical and electronic documents slightly favors transfer to NDCA.

It is undisputed that several sources of proof relevant to this litigation are located within and proximal to NDCA such as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Defs.' Mot. at ¶ 14. On the other hand, it is questionable if any sources of proof are located within or proximal to WDTX; Triller's only reference to such possible documents is that "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." Pl.'s Resp. at ¶ 8. Triller also notes that most sources of proof relevant to this litigation are not in NDCA, but its resulting conclusion that this fact "clearly weigh[s] against transfer" does not necessarily follow. *Id*. at ¶ 7.

Triller lists 20 sources of proof identified from Defendants' depositions including software design and testing documents relevant to infringement, source code relevant to infringement and damages, development timelines relevant to infringement and willfulness, and data servers relevant to infringement and damages. *Id*. at ¶¶ 6–7. Of these sources of proof, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and none are located within or proximal to WDTX. *Id*. Under current Fifth Circuit precedent, the physical location of electronic documents affects the outcome of this private interest factor. *See Volkswagen II*, 545 F.3d at 316.[1] Because the documents are housed on servers, documents may be located on multiple servers in multiple

---

[1] In several previous orders, this Court has noted that this precedent is out of touch with modern patent litigation. *Fintiv*, 2019 WL 4743678, at *8; *Uniloc 2017 LLC v. Apple Inc.,* 6-19-CV-00532-ADA, 2020 WL 3415880, at *9 (W.D. Tex. June 22, 2020). In those cases, this Court acknowledged that "all (or nearly all) produced documents exist as electronic documents on a party's server. Then, with a click of a mouse or a few keystrokes, the party produces these documents." *Id.*

districts—as is the case here with documents being stored in ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Pl.'s Resp. at ¶¶ 6–7. As it appears that no sources of proof or servers are located within WDTX, yet a server with access to TikTok's source code is located within ▮▮▮▮▮▮, the Court finds this private interest factor slightly favors transfer to NDCA. *Id*. at ¶ 6 n.7.

### ii. The Availability of Compulsory Process to Secure the Attendance of Witnesses

"In this factor, the Court considers the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order." *Fintiv*, 2019 WL 4743678, at *5 (citing *Volkswagen II*, 545 F.3d at 316); *Uniloc*, 2020 WL 3415880, at *10. This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple, Inc.*, 581 F.App'x. 886, 889 (Fed. Cir. 2014). A court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person,"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). As party witnesses almost invariably attend trial willingly, "[w]hen no party has alleged or shown any witness's unwillingness, a court should not attach much weight to the compulsory process factor." *CloudofChange, LLC v. NCR Corp.*, No. 6-19-cv-00513 (W.D. Tex. Mar. 17, 2020). Moreover, the ability to compel live trial testimony is crucial for evaluating a witnesses' testimony. *Aguilar-Ayala v. Ruiz*, 973 F.2d 411, 419 (5th Cir. 1992).

The Parties have specifically identified three non-party witnesses: TikTok application content creator ▇▇▇▇ (Los Angeles, CA), TikTok application content creator ▇▇▇▇ (San Joes, CA), and co-inventor of the Asserted Patent Mr. Samuel Rubin (Brooklyn, NY). Defs.' Reply Ex. D, E; Pl.'s Amend. Compl. Ex. 1. Of these three, only ▇▇▇▇ falls within NDCA's subpoena power, and she is willing to testify in NDCA but not WDTX. Defs.' Reply Ex. E at ¶ 6. Since ▇▇▇▇ states she is a willing NDCA witness, there is no indication that this suit will benefit from NDCA's ability to subpoena her. *Id*.

Defendants also claim that "[n]early all non-party and party witnesses likely to be called by TTI and Triller reside in California and are subject to subpoena in NDCA[.]" Defs.' Reply at ¶ 5. Defendants' assertion is plausible, but as regards non-party witnesses—the primary focus of this private interest factor—the fact remains that only one NDCA witness has been specifically identified, and she is a willing NDCA witness. Since "no party has alleged or shown [this witness's NDCA] unwillingness, a court should not attach much weight to the compulsory process factor." *CloudofChange, LLC v. NCR Corp*., No. 6-19-cv-00513 (W.D. Tex. Mar. 17, 2020).

Likewise regarding unidentified potential non-party witnesses from Apple and Google, Defendants state that "Triller refers to Apple at least nine times in the Complaint . . . [t]hese hardware and software components are designed by Apple or Google in [NDCA] . . . Apple and Google likely have relevant technical information." Defs.' Mot. at ¶ 11. The Court is persuaded that non-parties Apple and Google would be equally subject to subpoena in NDCA as WDTX due to their substantial presence in both districts, and that relevant witnesses will be identifiable from both companies in either district. *See* Pl.'s Resp. at ¶ 10.

The Court agrees with Defendants that non-party witness testimony may possibly be better secured in NDCA than WDTX, but this possibility can only contribute negligibly to the resolution of this private interest factor. *See Mini Melts, Inc. v. Uniworld Corp. WLL,* 2008 WL 4441979, *4 (E.D. Tex. 2008). Furthermore, Triller does not specifically identify any witnesses that fall within WDTX's subpoena power. Pl.'s Resp. at ¶¶ 8–10. The Court finds this private interest factor to slightly favor transfer to NDCA due to the presence of one non-party witness falling within NDCA's subpoena power.

### iii. The Cost of Attendance for Willing Witnesses

The convenience of witnesses is the single most important factor in the transfer analysis. *SynKloud Techs., LLC v. Dropbox, Inc.*, No. 6:19-CV-00525-ADA, 2020 WL 2494574, at *4 (W.D. Tex. May 14, 2020); *In re Genentech*, 566 F.3d at 1342. As the Fifth Circuit has held, it is obviously more convenient for witnesses to testify closer to home, and additional distance means additional travel, meal, and lodging costs, as well as additional time away from the witnesses' regular employment. *Volkswagen*, 545 F.3d at 317. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id*. Significantly, this factor relates primarily to the inconvenience placed on willing non-party witnesses, not party witnesses. *See Seven Networks*, 2018 WL 4026760, at *9 (collecting cases); *Frederick v. Advanced Fin. Sols., Inc.*, 558 F.Supp.2d 699, 704 (E.D. Tex. 2007) ("The availability and convenience of party-witnesses is generally insignificant because a transfer based on this factor would only shift the inconvenience from movant to nonmovant."). Under this factor, courts should consider all potential material and relevant witnesses." *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-00693, 2017 WL 4155236, at *5 (E.D. Tex.

Sept. 19, 2017). When witnesses will be required to travel significant distances regardless of whether the case is transferred, "the '100-mile rule' should not be rigidly applied." *In re Genentech*, 566 F.3d at 1344; *see In re TracFone Wireless, Inc.*, No. 2021-136, 2021 WL 1546036 (Fed. Cir. Apr. 20, 2021).

Defendants have specifically identified only two non-party "content creator" witnesses who "are likely to provide testimony relevant to at least damages, such as how they use the TikTok app and whether they use the accused feature." Defs.' Reply at ¶ 3. Both content creators reside in California (Los Angeles and San Jose) and are willing to testify in NDCA but not WDTX due to geographical convenience. *Id.*, Ex. D at ¶ 8; *id.*, Ex. E at ¶ 6. Defendants also imply that they would be unable to find satisfactory replacement witnesses close to WDTX: ▮ ▮" *Id.* at ¶ 3. The Court is unconvinced that these two "content creators" have unique and relevant testimony or that a ▮ content creator limitation is necessary to secure relevant testimony on how the TikTok application is used and to what degree the GSV feature is utilized. The Court specifically notes that there are approximately 50 million daily TikTok application users in the United States,[2] and so the Court is unpersuaded by Defendants' implication that not one of these 50 million users would be able to provide the same or similar testimony on how they use the TikTok app and whether they use the accused feature as ▮ content creators. Furthermore, the Court is also unconvinced that other sources of information would not be a more reliable or readily available alternatives to the same testimony that could be obtained from a ▮ content creator. For example, other reliable methods querying GSV utilization such as data analytics or surveys are widely utilized and accepted forms of data collection.

---

[2] Alex Sherman, *TikTok reveals detailed user numbers for the first time*, CNBC, https://www.cnbc.com/2020/08/24/tiktok-reveals-us-global-user-growth-numbers-for-first-time.html (last accessed July 8, 2021).

Triller's non-party witness from New York is a co-inventor of the Asserted Patent; since the co-inventor of the Asserted Patent is already a Triller party witness, the non-party inventor would likely provide duplicative testimony. *Id*. at ¶ 4 n.9.

The Court finds that the cost of attendance for willing non-party witnesses is neutral between NDCA and WDTX because the New York inventor's testimony will likely be duplicative of Triller's party witness inventor, and the California content creators are not unique witnesses.

For party witnesses, Triller merely provides a table of 19 individuals with their names and job descriptions with no further explanation as to what potentially relevant testimony each individual might testify to. Pl.'s Resp. at ¶ 11–12. In its brief and indecipherable chart, Triller also fails to identify which party each individual witness is affiliated with and expects the Court to attribute each witness to a particular party from the "responsibilities" described therein when the "responsibilities" merely constitute vague phrases such as "mid-market account manager" with no further descriptor or party affiliation. *Id.* Triller does not provide the actual job titles for these individuals and merely states that "[m]ost of the party or party-affiliated witnesses with material information about this action are located in places other than NDCA, as revealed by the following table: . . . ." *Id.* Because the Court cannot decipher which party many of these individuals are associated with, the Court cannot determine their relevance in the convenience analysis. The Court finds that Triller's chart submission, without further explanation as to the relevance or even substance of a witness's testimony, is insufficient and given minimal weight in the convenience analysis.

Nevertheless, according to Triller's chart, ████████████████████
████████████████████

████. *Id*. The witnesses from New York include the co-inventor of the Asserted Patent (a Triller employee), and ████████████████████████████████████████ *Id*. The witnesses from ████████████████████████████████████████████████████. *Id*. Since Triller does not specify how it would use the ██ witnesses associated with ████████████████████████████████ or how their testimonies would differ, the Court infers that these witnesses would give largely duplicative testimony relevant to damages.

The witnesses from ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. *Id*. The witness from ██ ████████████████████████████████████████, and the witness from ████████████████████████████████████████████████ ████████ *Id*. Lastly, the witnesses from ████████████████████████ responsible for distribution of the TikTok application to iOS and Android devices (duplicative), and another financial witness. Defs.' Reply at ¶ 5. Furthermore, Defendants claim that ████████ ████████████████████████████████████████████" are located in NDCA, although none are named. *Id*. Again, Triller provides no additional information as to what testimony such witnesses would provide or whether they would testify to any unique or relevant information.  In short, the Court infers from the Parties' briefs that various potential party witnesses relevant to this suit may reside in ████████████████████████████ ████████.

"In Seven Networks, the court found that the inconvenience to Google's party witnesses if the case was not transferred would generally be the same as the inconvenience to the plaintiff's

party witnesses if the case was transferred, and thus concluded that the two concerns canceled each other out." *Texas v. Google, LLC*, 2021 WL 2043184, at *5 (E.D. Tex. May 20, 2021) (citing *Seven Networks, LLC v. Google, LLC*, 2018 WL 4026760, at *12). Likewise here, the presence of witnesses in NDCA and WDTX "cancel[] each other out." *Id.* Since Triller does not adequately establish its reasoning for the inclusion of other potential party witnesses in its two-page chart, the Court finds this factor to be neutral.

### iv. All Other Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive

When examining practical problems, this Court considers problems such as those rationally based on judicial economy which will weigh heavily in favor of or against transfer. *In re Volkswagen of Am., Inc.,* 566 F.3d 1349, 1351 (Fed. Cir. 2009) (*Volkswagen III*). Of primary concern here is Defendants' co-pending NDCA infringement suit against Triller on three patents, and the purported overlap of witnesses with this suit. Defs.' Mot. Ex. 2; Defs.' Mot. at ¶¶ 16–17. The three patents pending litigation in NDCA are titled "Method of enabling digital music content to be downloaded to and used on a portable wireless computing device." Defs.' Mot. Ex. 2 at ¶ 4. Defendants' NDCA infringement claims do not relate to the GSV feature central to litigation pending here in WDTX, and so the Court can not speculate as to the degree of overlap of witnesses. *See id*. Furthermore, Defendants created this possibility of inefficiency themselves by filing their NDCA action second rather than bringing their infringement claims as counterclaims here. As such, Defendants should not be significantly rewarded in this balancing test for creating the very problem this factor weighs. NDCA has also stayed that action pending resolution of this Motion to Transfer. Pl.'s Resp. at ¶ 13. The possibility of judicial inefficiency

Defendants created is weighed against the modest progress already made in this case, and the Court find this private interest factor to be neutral.

## B. The Public Interest Factors Slightly Favor Transfer

### *i. The Administrative Difficulties Flowing from Court Congestion*

The relevant inquiry under this factor is actually "[t]he speed with which a case can come to trial and be resolved[.]" *In re Genentech*, 566 F.3d at 1347. A faster average time to trial means a more efficient and economical resolution of the claims at issue.

Defendants assert that this factor is neutral because the "Federal Circuit has held that there is no 'appreciable difference in docket congestion between the forums [WDTX and NDCA] that could legitimately be worthy of consideration under this factor.'" Defs.' Mot. at ¶ 18 (citing *In re Adobe Inc.*, No. 2020-126, 2020 WL 4308164 at *3 (Fed. Cir. July 28, 2020)). Without further elaboration, Defendants also cite to an instance where this Court determined this factor to be neutral between WDTX and NDCA. Defs.' Reply at ¶ 8. In that instance, this Court determined this factor was neutral because "neither discovery nor a *Markman* hearing have occurred." *10Tales, Inc. v. TikTok, Inc., 2021 WL 2043978* at *5 (W.D. Tex. May 21, 2021). In this case, discovery has occurred, and the *Markman* is imminent. *Markman* Order, ECF No. 76.

Triller argues that this factor weighs against transfer because this Court specifically (not WDTX) has demonstrated its ability to conduct safe and efficient in-person jury trials during the COVID-19 pandemic, this Court specifically (not WDTX) has a quicker rate of patent litigation disposal than NDCA, and NDCA has not held a patent trial in over a year. Pl.'s Resp. at ¶ 14. Recently, this Court analyzed a similar Motion to Transfer to NDCA and found that "[w]hile [movant] claims historically WDTX and NDCA have disposed of cases at comparable rates, recently this Court has proved more expeditious. In this Court's judgment, recent data is more

probative in determining court congestion. . . . Thus this Court finds that this factor weights against transfer" *Koss Corp. v. Apple,* 6-20-CV-00665-ADA, ECF No. 76 at 25–26 (W.D. Tex. April 22, 2021). Since Defendants do not rebut Triller's arguments that this Court can resolve this litigation with greater speed than NDCA, the Court finds that this factor weighs against transfer.

### *ii. The Local Interest in Having Localized Interests Decided at Home*

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-cv-04387-K, 2015 WL 13870507 at *4 (N.D. Tex. Jul. 23, 2015). TTI is headquartered within CDCA and has ▮ employees in California (▮ within NDCA). Defs.' Mot. at ¶ 9. Triller's principal place of business is within CDCA. *Id.* BDI's principal place of business is within NDCA, and ▮▮▮ *Id.* at ¶¶ 10–11; Defs.' Reply at ¶ 8.

Triller does not dispute that a local interest in this case exists in NDCA, but rather argues that the presence of ▮▮▮ creates a WDTX local interest substantial enough to weigh against transfer. Pl.'s Resp. at ¶ 15. The Court is persuaded that the presence of the ▮▮▮, which is focused on revenue generation from the TikTok application and may provide testimony relevant to damages, creates a local interest in WDTX. *See id.* at ¶ 11. However, there remains no asserted *unique* connection between the purported acts of infringement and WDTX. *See id.* at ¶¶ 14–15.

For instance, the fact that Baylor University has a TikTok account does not create a unique connection to this venue that can weight against transfer because entities in NDCA and

throughout the United States likewise have TikTok accounts. Pl.'s Amend. Compl. at ¶ 5. However, ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒ ▒▒▒▒▒▒▒▒▒ does provide a unique connection leading to a local interest. Defs.' Mot. at ¶ 10. The Court is persuaded that ▒▒▒▒ connection to the alleged acts of infringement and presence are greater in NDCA than in WDTX. Therefore, the Court finds that this public interest factor slightly favors transfer to NDCA.

### iii. The Familiarity of the Forum with the Law that will Govern the Case

Both parties agree that this public interest factor is neutral. Pl.'s Resp. at ¶ 15. The Court also agrees.

### iv. The Avoidance of Unnecessary Problems of Conflicts of Laws of the Application of Foreign Law

Both parties agree that this public interest factor is neutral. *Id*. The Court also agrees.

## V. CONCLUSION

In view of the analyzed factors above, the Court determines that NDCA is a "clearly more convenient" venue for this suit. *See Volkswagen II*, 545 F.3d at 314 n.10. This determination was not reached by merely performing a raw counting exercise, but rather through consideration of the fact that only one of the convenience factors cross the neutrality threshold to favor WDTX and weigh against transfer, whereas three factors do cross this threshold in favor of transferring to NDCA. The three factors slightly favoring transfer to NDCA are the relative ease of access to sources of proof, the availability of compulsory process, and the local interest factor. The administrative difficulties flowing from court congestion factor weighs against transfer. Where "several relevant factors weight in favor of transfer, and others are neutral, then the speed

of the transferee district court should not alone outweigh all of those other factors." *In re Genentech,* 566 F.3d at 1347. Triller's choice of this venue does not factor into the Section 1404(a) analysis, and so the speed of WDTX alone cannot counterbalance the totality of NDCA's multiple slight conveniences. *In re TS Tech USA Corp.*, 551 F.3d at 1320. Therefore, the Court **GRANTS** Defendants' Motion. IT IS SO ORDERED that this Action be **TRANSFERRED** to the NDCA.

SIGNED this 9th day of July, 2021.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE